No. 21-2655

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

In re RAYMOND HALL, et al.

Petitioners,

Petition for Mandamus from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Judith E. Levy

**CO-LIAISON COUNSELS' RESPONSE IN OPPOSITION
TO PETITION FOR WRIT OF MANDAMUS**

**LEVY KONIGSBERG LLP**
Corey M. Stern
605 Third Avenue, 33rd Fl.
New York, NY 10158
(212) 605-6200

**NAPOLI SHKOLNIK PLLC**
Hunter J. Shkolnik
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088

*Co-Liaison Counsel for Individual Plaintiffs*

Dated: July 1, 2021

# TABLE OF CONTENTS

Table of Authorities.................................................................................. ii

Introduction ............................................................................................1

Standards for Mandamus ..........................................................................6

Argument.................................................................................................7

I.      Petitioners Lack a Clear and Indisputable Right.............................7

II.     The Petition Rests on a Tendentious and
        One-Sided Account of the Proceedings in the District Court ......................13

III.    Petitioners Have Ample Alternate Means to Raise Their Objections ...........19

IV.     Petitioners' Approach Would Conflict with Sound
        Principles of Judicial Administration...........................................20

Conclusion..............................................................................................21

# TABLE OF AUTHORITIES

## Cases

*B.H. v. McDonald*, 49 F.3d 294 (7th Cir. 1995)........................................................9

*Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379 (1953) ...............................7

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ...............................6

*City of Pittsburgh v. Simmons*, 729 F.2d 953 (3d Cir. 1984) ..................................16

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ....................................................11, 12, 21

*Ex parte Fahey*, 332 U.S. 258 (1947)........................................................................6

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ........................................................12

*Geier v. Alexander*, 801 F.2d 799 (6th Cir. 1986)....................................................6

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982)..............................10

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
    332 F.3d 976 (6th Cir. 2003)...............................................................10, 11

*Houston v. United States*, 2021 WL 1400905 (6th Cir. Jan. 20, 2021).................6, 7

*In re American President Lines, Ltd.*, 929 F.2d 226 (6th Cir. 1991) ......................13

*In re Caudill*, 2020 WL 6748203 (6th Cir. Oct. 30, 2020)........................................7

*In re Cincinnati Enquirer*, 94 F.3d 198 (6th Cir. 1996)..........................................10

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005)............18

*In re Jones*, 2021 WL 1811625 (6th Cir. Feb. 2, 2021) ............................................6

*In re Kensington Intern. Ltd.*, 368 F.3d 289 (3d Cir. 2004) ....................................18

*In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137 (6th Cir. Oct. 2019).....16

ii

*In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919 (6th Cir. 2020)......................17

*In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664 (6th Cir. 2020)......................18

*In re Post–Newsweek Stations*, 722 F.2d 325 (6th Cir. 1983)................................13

*In re University of Michigan*, 936 F.3d 460 (6th Cir. 2019) ......................10, 11, 15

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008)....................................................7, 19

*Marino v. Ortiz*, 484 U.S. 301 (1988) .....................................................................12

*Matter of Bankers Trust Co.*, 775 F.2d 545 (3d Cir. 1985)......................................13

*Nat'l Farmers Org., Inc. v. Oliver*, 530 F.2d 815 (8th Cir. 1976) ..........................17

*P.A.C.E. v. Sch. Dist. of Kan. City*, 312 F.3d 341 (8th Cir. 2002) ..........................12

*Persels & Associates, LLC*, 729 F.3d 1309 (11th Cir. 2013) ..................................12

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ...............................10

*Rovinsky v. McKaskle*, 722 F.2d 197 (5th Cir. 1984)..............................................10

*United States v. Lanier*, 748 Fed. Appx. 674 (6th Cir. 2018) .................................18

*United States v. Valenti*, 987 F.2d 708 (11th Cir.),
    *cert. denied*, 510 U.S. 907 (1993) ...................................................................10

*United States v. Young*, 424 F.3d 499 (6th Cir. 2005)...............................................6

*Will v. United States*, 389 U.S. 90 (1967) .................................................................7

## Rules and Statutes

28 U.S.C. § 753(b)...............................................................................................9, 17

Fed. R. Civ. P. 23(b)(1) ............................................................................12

Fed R. Civ. P. 77(b) ............................................................................2, 9

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation (4th ed. 2004) ..........2, 8, 9

**INTRODUCTION**

Pursuant to this Court's Order of June 28, 2021, Co-Liaison Counsel respectfully submit this Opposition to the Petition for Writ of Mandamus filed by objectors Raymond Hall, et al.  The district court has fairly and conscientiously overseen one of the most complex civil litigations in American history.  The Petition does not meet the stringent standards for mandamus and should be denied.

Petitioners are nine of the more than ~72,000 registrants to the proposed settlement.  *See* ECF Doc. 1790, at PageID.64248.[1]  Petitioners are (by their own admission) "non-named plaintiffs." Petition at 2. As such, Petitioners are represented by lead Plaintiffs' counsel—Co-Lead Class Counsel and Co-Liaison Counsel for the Individual Plaintiffs—in settlement discussions and in conferences with the Court. To the extent individual Chapman Plaintiffs and the Reynolds Objector filed their own actions, those actions were coordinated before the district court in the lead action (*i.e.*, Case Nos. 5:17-cv-13890-JEL-MKM, 5:18-cv-10679-JEL-MKM (E.D. Mich.)). Petitioners' rights to participate in the proceedings are set by the district court's case management orders, including its orders appointing Co-Liaison Counsel for the Individual Plaintiffs.

The reasonable structure adopted by the district court in this case is common in complex litigation, and indeed it is the only way to manage this sprawling

---

[1]     There are about 85,000 total registrations, with about 13,000 duplicates.

1

litigation in a practical, let alone efficient manner. To be sure, hearings involving contested motions are handled on Zoom and open to all counsel and the public. District Court Order at 13 (Exhibit A to Petition). But if every plaintiff or every attorney representing an absent class member were granted full participation rights in every conference associated with this litigation, those conferences would accomplish little and waste an extraordinary amount of the court's time. Under Petitioners' approach, in-chambers meetings (even those involving purely non-adjudicative matters) would involve hundreds if not thousands of participants and would need to be held in a sports arena.

There is nothing exceptional or unusual about the proceedings below. Like virtually every court handling complex litigation, the district court opted to meet with the Court-appointed lead class and liaison counsel throughout this litigation and as part of the partial settlement process. That does not convert perfectly proper communications with the parties into ex parte communications. The district court's management of the litigation is entirely consistent with the Manual on Complex Litigation and authorized by Fed. R. Civ. P. 77(b).

Petitioners raise objections to a component of the proposed settlement (such as bone scans to detect lead exposure[2]), but those objections are premature. These

---

[2]    Petitioner Reynolds's participation in this mandamus action is seemingly based on his objection to the proposed settlement, which will be heard on July 12th, 13th, and/or 15th, 2021. *See* ECF Doc. 1814, at PageID.64773. However,

issues are currently before the district court, which has not yet approved the proposed settlement.  The district court has explained that "[n]one of the objections, including that of the Hall objectors, have been discussed, adjudicated, or decided."  District Court Order at 13 (Exhibit A to Petition).  Indeed, the district court has scheduled several dates (July 12th, 13th, and 15th) for both represented and pro se objectors to provide—in addition to the written briefs they have already submitted to the district court—argument on their objections at the final approval and fairness hearing. The hearing on these objections will be held in open court, on the record.  Objectors will have every opportunity to be heard and (after the district court's ruling) to pursue whatever avenues of review are available to them.[3]  A petition for writ of mandamus is hardly the only adequate means by which objectors can raise their arguments.

Moreover, there is a fundamental disconnect between (i) Petitioners' objections to the proposed settlement and (ii) Petitioners' supposed legal right to

---

it is clear that the substance of the Reynolds objection as to bone scans is not before this Court.

[3]    It should be noted that the proposed settlement is not a class action settlement. Per the proposed settlement, no child (or any person who was under 18 years old on or after April 25, 2014) is part of a settlement class. Per the proposed settlement, nor is any person who retained counsel to pursue their claims. If approved, 79.5% of the proposed settlement funds are earmarked for children, and a significant portion of the adults who have made claims are represented by counsel. Thus, even conservatively, no more than 15% of the proposed settlement funds will flow to the settlement class. Nonetheless, even those individuals who by definition would not be members of the settlement class have an opportunity to object pursuant to the proposed settlement. And the Chapman Plaintiffs and Reynolds Objector have done so.

participate in the (fictitious) "ex parte" conferences. Petitioners have not even alleged that anything improper occurred at the in-chambers conferences or that any of their objections were affected by what transpired at the conferences. For example, the Hall Objectors have filed objections only with respect to the requested attorneys' fees, and they state that they "take no position on final approval of the settlement itself."[4]  Petition at 1 n.2. Yet there is no indication (or even an allegation) that attorneys' fees were ever a topic of the conferences about which Petitioners complain. For their part, the Chapman Plaintiffs and the Reynolds Objector object not to fees but to other aspects of the proposed settlement. *Id.* But they, too, have failed to show that any of their objections were discussed at the in-chambers conferences, and of course the district court has yet to rule on any objections to the proposed settlement. Thus, Petitioners' objections to the proposed settlement have little if anything to do with the relief sought in the Petition.

This Court should reject Petitioners' attempt to disrupt the district court proceedings before that court has even rendered a decision on final approval of the proposed settlement. Initially, of course, the proposed settlement has been met with wide approval, even among various plaintiffs' counsel with differing numbers of

---

[4]     Co-Liaison Counsel notes that Article 20.1 of the Amended Settlement Agreement permits an objector to "explain[] why he or she believes the Settlement Agreement should not be approved by the Federal Court as fair, reasonable, and adequate." *See* Amended Settlement Agreement, ECF Doc. 1394-2, at PageID.54184. An objection solely to fees hardly fits this rubric.

4

clients, who in turn fit into different categories of the proposed settlement. Indeed, the vast majority of registrants for the proposed settlement have registered without any objection at all.[5] More importantly, the Petitioners' objections do not actually go to the kinds of terms that require any appellate court intervention at all—let alone the kind of extraordinary interlocutory mandamus relief they seek here.

Quite so, the Chapman Plaintiffs, the Reynolds Objector, and the Hall Objectors do not need to have bone scans taken in order to participate in the proposed settlement, and they do not have to participate in it at all if they so choose.[6] Further, the Hall Objectors could have opted out and pursued their claims individually on their terms.[7] In doing so, they could have attempted to negotiate whatever settlement they saw fit with the various defendants. Nevertheless, the Hall Objectors have raised objections that are scheduled to be heard by the district court in two weeks.

---

[5]    For example, the Cuker Law Firm (which represents the Chapman Plaintiffs) represents about 900 non-objecting registrants for the proposed settlement, and Washington Legal (which represents the Reynolds Objector) represents approximately 100 non-objecting registrants.

[6]    While the proposed settlement itself, and specifically the subject of bone scans, is not the subject of this mandamus petition, the Petitioners are attempting to intertwine their current arguments with alleged (but unsubstantiated) concerns about bone scans. The present action, then, is simply a stalking horse to preemptively appeal the final approval of the proposed settlement before the district court renders a decision on it.

[7]    The deadline to opt out was March 29, 2021. *See* Order Granting Preliminary Approval (Jan. 21, 2021), ECF Doc. 1399, at PageID.54467.

As this Court has noted, in rejecting an intervenor's objections to a class action settlement, "the position taken by the objectors is that by merely objecting, they are entitled to stop the settlement in its tracks, without demonstrating any factual basis for their objections and to force the parties to expend large amounts of time, money and effort to answer their rhetorical questions." *Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 449, 464 (2d Cir. 1974)). "To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process. On their theory no class action would ever be settled, so long as there was at least a single lawyer around who would like to replace counsel for the class and start the case anew. To permit the objectors to manipulate the distribution of the burden of proof to achieve such an end would be to permit too much." *Id*.

## STANDARDS FOR MANDAMUS

Mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947). A petitioner must demonstrate "a clear and indisputable right to the relief sought." *United States v. Young*, 424 F.3d 499, 504 (6th Cir. 2005). *See, e.g.*, *In re Jones*, 2021 WL 1811625, *1 (6th Cir. Feb. 2, 2021) (denying petition for writ of mandamus for lack of "a clear and indisputable right to the relief sought"); *Houston v. United States*,

2021 WL 1400905, *3 (6th Cir. Jan. 20, 2021) (same); *In re Caudill*, 2020 WL 6748203, *1 (6th Cir. Oct. 30, 2020) (same).

In determining whether mandamus relief is appropriate, the Court balances five factors: (1) whether the petitioner "has no other adequate means, such as direct appeal, to attain the relief desired"; (2) whether "the petitioner will be damaged or prejudiced in a way not correctable on appeal"; (3) whether the district court's action "is clearly erroneous as a matter of law"; (4) whether the district court's action "is an oft-repeated error, or manifests a persistent disregard of the federal rules"; and (5) whether the district court's action "raises new and important problems, or issues of law of first impression." *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008). "[O]nly exceptional circumstances amounting to a judicial 'usurpation of power,'" *Will v. United States*, 389 U.S. 90, 95 (1967), or a "clear abuse of discretion," *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383 (1953), "will justify the invocation of this extraordinary remedy," *Will*, 389 U.S. at 95.

Petitioners cannot meet this stringent standard.

## ARGUMENT

## I.    PETITIONERS LACK A CLEAR AND INDISPUTABLE RIGHT.

Petitioners cannot establish a "clear and indisputable right" to participate in in-chambers conferences in the district court where no adjudicative rulings are issued, and Petitioners' attempt to label the communications at those conferences as

7

"ex parte" is incorrect. By definition, an ex parte communication involves contact with the Court by one side of the case to the exclusion of the other. That did not happen in this case. Counsel for both Plaintiffs and Defendants were present at the district court conferences. The court did not meet with one side to the exclusion of the other. Furthermore, Petitioners were represented in those conferences—by Interim Lead Counsel for the Putative Class Counsel as long as they remain class members; and Co-Liaison Counsel for Individual Plaintiffs if they had opted out of the class.   The district court also acts a fiduciary for class members during conferences and has additionally taken the extraordinary and (to the undersigned's knowledge) virtually unprecedented measure of procedural equity in allowing a multi-day hearing for both objectors represented by counsel as well as pro se objectors to ventilate their objections in open court, on the record.

An in-chambers meeting with all parties does not constitute a forbidden ex parte conference. The opposite, of course, is actually true. It is common for courts to have conversations with appointed counsel off the record. The Manual on Complex Litigation instructs that "[c]omplex litigation often involves numerous parties with common or similar interests but separate counsel," and that "[t]raditional procedures" "may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily." Federal Judicial Center, Manual for Complex Litigation, § 10.22, at 24 (4th ed. 2004). Among the "special procedures" the Manual

on Complex Litigation embraces is "confidential discussions with the judge." *See id*., § 13.13, at 170.

The Manual for Complex Litigation specifically endorses that procedure:

On-the-record conferences will minimize later disagreements, particularly if the judge anticipates issuing oral directions or rulings. Many judges hold all conferences on the record, particularly where numerous attorneys are in the courtroom. Nevertheless, an informal off-the-record conference held in chambers or by telephone can sometimes be more productive; a reporter can later be brought in to record the results of the conference. (28 U.S.C. § 753(b) sets forth the requirements for recording various proceedings.) Rule 16 requires (and sound practice dictates) that all matters decided at pretrial conferences be memorialized on the record or in a written order. Counsel may be directed to submit proposed orders incorporating the court's oral rulings.

*Id.* § 11.22, at 41. As this passage suggests, the Manual on Complex Litigation intends for settlement discussions to be handled with care—precisely as the district court has consistently done throughout the litigation. But the key point is this: the Manual on Complex Litigation provides a lengthy and universally accepted set of guidance which the district court followed in this case.

Correspondingly, Federal Rule of Civil Procedure 77(b) gives the Court the power to hold "[a]ny other act or proceeding [other than a trial on the merits] . . . in chambers." Fed. R. Civ. P. 77(b). Rule 77(b) "allows district judges the discretion to conduct proceedings in chambers, as long as the trial upon the merits is held in open court." *B.H. v. McDonald*, 49 F.3d 294, 297 (7th Cir. 1995).

A district court's broad discretion to conduct proceedings in chambers is well established. There is no "right to intrude uninvited into conferences at the bench and in chambers." *Rovinsky v. McKaskle*, 722 F.2d 197, 201 (5th Cir. 1984); *see also United States v. Valenti*, 987 F.2d 708, 714 (11th Cir.) (affirming trial court's "traditional authority to conduct closed bench conferences"), *cert. denied*, 510 U.S. 907 (1993). More than 40 years ago, Justice Brennan pointed out that nothing in the Supreme Court's jurisprudence "intimate[s] that judges are restricted in their ability to conduct conferences in chambers." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n. 23 (1980) (Brennan, J., concurring); *see also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n. 25 (1982) (holding that a trial court has traditional authority to conduct in camera conferences); *In re Cincinnati Enquirer*, 94 F.3d 198, 199 (6th Cir. 1996) (denying writ of mandamus in a class action where district court closed a summary jury trial to public, because such a procedure "functions to facilitate settlement").

This Court has encouraged courts to hold settlement discussions in private. "In fact, to achieve the purposes that the Rules do permit, settlement conferences should be private, not open to the media and the public." *In re University of Michigan*, 936 F.3d 460, 464 (6th Cir. 2019). This Court has opined:

> [F]or a settlement conference to work, "parties must feel uninhibited in their communications." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). They must be free to make candid assessments, admit their strengths and weaknesses, offer

concessions, and put on hold the performative aspects of trial. For this reason, "confidential settlement communications are a tradition in this country" and "[t]his Court has always recognized the need for ... secrecy in settlement proceedings." *Id.*

*Id.* at 465.

Petitioners' reliance on *Devlin v. Scardelletti*, 536 U.S. 1 (2002), is completely misplaced, as that case stands for the limited proposition that an unnamed absent class member who objects in a timely manner to approval of a settlement at a fairness hearing "should be considered a 'party' *for the purposes of appealing the approval of the settlement*." *Id.* at 7 (emphasis added). But here the district court has not approved the proposed settlement, and Petitioners are not seeking to appeal it. And Petitioners ignore the limited scope of the holding in *Devlin*: "Nonnamed class members, however, may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Id*. at 9–10. Accordingly, Petitioners are not analogous to the objectors in *Devlin*.

This (correct) reading of *Devlin* is confirmed by Justice Scalia's trenchant dissent in that case. Emphasizing the narrowness of the majority's ruling permitting an absent class member to be considered a party for "purposes of appealing the approval of the settlement," Justice Scalia pointed out that "[n]ot even the petitioner, however, is willing to advance the novel and surely erroneous argument that a

11

nonnamed class member is a party to the class-action litigation *before the class is certified*." *Id.* at 16 & n.1 (Scalia, J., dissenting) (emphasis in original). Thus, "[i]t is undisputed that the class representatives are the only members of the class who have [certain] rights," such as "as conducting discovery and moving for summary judgment." *Id.* at 16. The only groups to a class action who share "party" status with class representatives and defendants are "those who intervene or otherwise enter through third-party practice." *Id.*[8]

It is therefore unsurprising that *Devlin* offers no support for Petitioners attempt to participate in in-chambers conferences in the district court. *See Day v. Persels & Associates, LLC*, 729 F.3d 1309, 1322 (11th Cir. 2013) (absent class members are not parties whose consent is required for a magistrate judge to enter a final judgment); *P.A.C.E. v. Sch. Dist. of Kan. City*, 312 F.3d 341, 343 (8th Cir. 2002) ("[P.A.C.E.] relies only on *Devlin*, which is not on point [in a challenge to the certification of a class] because it involved a final order approving settlement of the case."). Likewise, Petitioners' citation to *Fidel v. Farley*, 534 F.3d 508, 512 (6th Cir. 2008) ("a nonnamed member of a mandatory Rule 23(b)(1) class who has objected in a timely manner to approval of a settlement at a fairness hearing has the

---

[8]     An objector is surely not the same thing as an intervenor—the Supreme Court held so in *Marino v. Ortiz*, 484 U.S. 301, 303–04 (1988). *See also Devlin*, 536 U.S. at 19 (Scalia, J., dissenting) ("We have already held, however, that filing an objection does not make one a party if he does not also intervene.").

power to bring an appeal without first intervening"), is similarly unavailing, because Petitioners are not seeking to bring an appeal from a final settlement approval.

Accordingly, Petitioners have no "clear and indisputable right" to attend settlement conferences and other in-chambers conferences at which no merits adjudications are made, and the Court should deny their application for mandamus for that reason alone.

## II.   THE PETITION RESTS ON A TENDENTIOUS AND ONE-SIDED ACCOUNT OF THE PROCEEDINGS IN THE DISTRICT COURT.

District courts possess ample statutory and inherent powers to decide how to conduct judicial business, and it is well settled that mandamus "cannot be used to control a district court in the exercise of discretionary duties." *In re American President Lines, Ltd*., 929 F.2d 226, 227 (6th Cir. 1991) (citing *In re Post–Newsweek Stations*, 722 F.2d 325, 329 (6th Cir. 1983) (denying mandamus)). *See also Matter of Bankers Trust Co*., 775 F.2d 545, 547 (3d Cir. 1985) ("Where a matter is committed to the discretion of the district court, and therefore it cannot be said that a litigant's right to a particular result is 'clear and indisputable,' a writ of mandamus will only be granted for clear error of law.").

Petitioners' objections are based on discretionary decisions by the district court as to case management, the appointment of Co-Lead Class Counsel and Co-Liaison Counsel for the Individual Plaintiffs, and the conduct of in-chambers conferences.  Worse, the objections rest on a one-sided and indeed inaccurate

13

description of the proceedings below—one that the district judge and all the parties to the proceedings have denied.

For example, Petitioners accuse the district court of holding "substantive unrecorded conferences." Petition at 30. Yet the district court has explained that nothing adjudicative occurred at the two conferences in question, on March 1 and May 3, 2021. District Court Order at 6 (Exhibit A to Petition). Rather, the district court "has always adjudicated motions and other matters in public hearings on the record." *Id.* at 4. Petitioners cannot point to a single ruling or order by the court at those conferences.

Petitioners accuse the district court of "prescrib[ing] or dictat[ing] the litigation strategy of the parties in advocating for the settlement." Petition at 30. That accusation was not raised in the district court and therefore has been waived for purposes of appellate review. Nowhere in their Petition (and certainly not in the underlying motion) do Petitioners articulate exactly what they are referring to—nor do they substantiate this sky-high allegation. In any event, the district court has explained the discussions that transpired at the March 1 and May 3 conferences, and nothing in those discussions amounts to the court's "prescribing or dictating" the parties' litigation strategy.[9] *See* District Court Order at 9–12.

---

[9]    Co-Lead Class Counsel Michael Pitt has filed a motion for reconsideration in the district court (ECF Doc. 1864), which underscores that mandamus relief should be denied. Mr. Pitt requests that the district court eliminate

Quite to the contrary, Petitioners acknowledge that what occurred in chambers was a meeting to address the strange circumstances of Co-Lead Class Counsel's motion to suspend the use of portable XRF scanning.  After months and months of negotiating the terms of the proposed settlement—a prominent and material component of which was permitting plaintiffs to prove exposure to lead through testing using a portable XRF bone scanner—Co-Lead Class Counsel filed a motion directly contradicting a core provision of the proposed settlement he was fully informed of and had previously supported (and was bound by the terms of the proposed settlement to continue to support).  The gist of the conversation was an uncomfortable but necessary inquiry into how Co-Lead Class Counsel wished to proceed and whether he intended to continue in that role.  This is precisely the sort of discussion that this Court has previously directed district courts to hold in private so that the parties may be "uninhibited in their communications." *In re University of Michigan*, 936 F.3d at 465.  Indeed, this Court has made clear that it is entirely proper

---

in its order denying the Hall Objectors' Motion "any reference to discussions and events which occurred in off-the-record proceedings in May 2021," stating that "[t]he Court acknowledged that these references to and its recollection of events which occurred in the off-record proceedings were unnecessary to the resolution of the motion." (ECF Doc. 1864, ¶ 5).  Mr. Pitt's motion confirms that the conferences in question concerned Mr. Pitt's conduct and his obligations under the proposed settlement agreement, not issues associated with motions or objections filed by others—and specifically not by Petitioners. Management of this process is quintessentially within the province of the district court. Regardless of Mr. Pitt's recollection, his motion for reconsideration confirms that the instant mandamus Petition should be denied.

for a district court judge to facilitate settlement.  *See In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137, at *3 (6th Cir. Oct. 2019) (denying mandamus petition and explaining: "Judges in complex litigation are encouraged to pursue and facilitate settlement in a variety of ways.").

Petitioners have not cited a single case in which a writ of mandamus was granted under similar circumstances.  In *City of Pittsburgh v. Simmons*, 729 F.2d 953, 955 (3d Cir. 1984), for example, the writ of mandamus was denied. To the extent the court opined that it might have entertained a mandamus petition seeking a verbatim transcript of proceedings, the opinion is distinguishable in two critical respects. First, the mandamus petition in that case was brought by a *party to the litigation* (which Petitioners are not). Second, binding statutory requirements as well as circuit precedent provide that courts provide transcripts when requested by *a party*.  Those requirements are inapplicable here.  Indeed, the statutory direction referenced by the *Simmons* court—28 U.S.C. § 753(b)—undermines Petitioner's argument.  The statute requires verbatim recording under specified circumstances not present in this case: for criminal matters, proceedings in open court unless the *parties* with the approval of the judge shall agree specifically to the contrary, and "such other proceedings as a judge of the court may direct or as may be required by rule or order of the court or as may be requested by any *party* to the proceedings."

16

(emphasis added.) The fact that this statute does not apply in this case confirms that the off-the-record proceedings were entirely appropriate here.

Petitioners also cite *Nat'l Farmers Org., Inc. v. Oliver*, 530 F.2d 815, 817 (8th Cir. 1976), which is likewise distinguishable. In that case, as in *Simmons*, the petitioner was a party who had authority to request a transcript under 28 U.S.C. § 753(b). The petitioning party—the defendant—had requested on-the-record proceedings and was rebuffed by the judge. Here, in contrast, Petitioners are not parties covered by Section 753(b)—and do not assert otherwise.

The remaining cases on which Petitioners rely are notably inapposite:

● *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 933 (6th Cir. 2020), involved plaintiffs who obtained certain DEA data in discovery over the defendants' objections and subject to a protective order. Non-parties subsequently requested that data from the plaintiffs pursuant to a public records request, and the district court held that the plaintiffs could not disclose the data. In holding that the information should have been made available, this Court criticized the district court judge for using the potential disclosure of that data at trial as a tactic to pressure the defendants into settling prior to trial. No remotely comparable situation exists here. In fact, Petitioners are the ones seeking to disrupt a freely negotiated proposed settlement between the parties.

● The "novel class certification mechanism" parenthetically referenced by Petitioners with respect to *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664 (6th Cir. 2020), was not an off-the-record settlement meeting. Rather, in that case, the district court authorized a "negotiation class" that was not formed for the purposes of litigation or settlement and thus contravened Rule 23. This case involves no such "negotiation class."

● *United States v. Lanier*, 748 Fed. Appx. 674 (6th Cir. 2018), did not involve a meeting with one party to the exclusion of objectors, much less another party. Instead, that case involved the district court "communicat[ing] ex parte with the court-appointed forensic examiner." *Id.* at 676. That did not occur here.

● *In re Kensington Intern. Ltd.*, 368 F.3d 289 (3d Cir. 2004), involved "325 hours of ex parte meetings with the attorneys for various parties in the Five Asbestos Cases. Many of these meetings took place at restaurants over lunch or dinner or at law firms. During the proceedings on remand, Judge Wolin acknowledged that he received extra-judicial information at the ex parte conferences." *Id.* at 297. Nothing like that happened here.

● *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005), did not hold that the objectors' absence from a closed-door meeting with the judge rendered the meeting ex parte; rather, the meeting excluded all counsel other than class counsel. *Id.* at 292 ("Immediately prior to the fairness hearing, there was a

discussion in the District Court's chambers between class counsel and the Court. Appellants' counsel were not invited."). Here, all parties were represented at the March 1 and May 3, 2021 conferences.

That Petitioners are forced to rely on such inapplicable and plainly distinguishable precedent demonstrates that their central arguments before this Court lack any legal support.

## III.  PETITIONERS HAVE AMPLE ALTERNATE MEANS TO RAISE THEIR OBJECTIONS.

The Petition fails for another reason: It is fundamental that a mandamus petitioner must show that there are "no other adequate means, such as direct appeal, to attain the relief desired." *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).

Here, Petitioners have been able to submit written briefs to the district court outlining their objections to the proposed settlement and will be able to raise them again at the final approval and fairness hearing in open court, on the record, in two weeks on July 12th, 13th, and 15th. If Petitioners are dissatisfied with the district court's resolution of their objections, Petitioners will be able to pursue whatever avenues of appellate review are available to them at that point. The instant Petition is not the only means to achieve the relief they seek.

Further, if any plaintiffs object to the bone scan protocols, or to any other aspect of the proposed settlement, they need not participate in the proposed settlement at all if they so choose.

19

## IV.   PETITIONERS' APPROACH WOULD CONFLICT WITH SOUND PRINCIPLES OF JUDICIAL ADMINISTRATION.

Petitioners ask this Court to start down a slippery slope by micromanaging how district judges run their courtrooms.  An appellate court should not dictate to a trial court when it may go off the record or when it may hold an in-chambers conference.  If the Court grants this petition, it will send a green light to potential interlopers to disrupt district court proceedings by seeking interlocutory relief in this Court every time they disagree with the discretionary case management decisions of the district courts. This Court will be swamped with mandamus petitions.  And district courts will be hamstrung and prevented from proceeding efficiently.

If Petitioners are granted the relief they seek, it will be impossible to restrict the disruptive effects to the objectors currently before the Court.  It will not be merely objectors' counsel who will seek to attend conferences in the district court, but other plaintiffs' attorneys as well as, presumably, pro se objectors.[10] It bears reiterating that there are more than 72,000 registrants for the proposed settlement in this case and that there are hundreds of individual lawsuits filed. Surely, Petitioners' counsel do not imagine that they can faithfully represent their interests as a sort of

---

[10]   As of 11:54 a.m. on June 30, 2021, there is already one pro se objector seeking to intervene (Mr. Jones Jr.), who has his own pro se appeal pending before this Court (21-1530). It should be noted that Mr. Jones made almost daily filings in the district court before the dismissal of the underlying case, and he has done the same in this Court since his appeal was docketed on May 26, 2021.

Objectors' Liaison Counsel.  Hundreds of attorneys and absent class members would flood the district court's chambers.  Cases like this one could not be effectively managed and would never be resolved.

Nor will the burden of these disruptions fall solely on the district court.  Justice Scalia's incisive dissent is again on point and highlights why hornbook law holds that Petitioners' request for relief must be denied:

> The belief that meritless objections, undeterred the first time, will be deterred the second, surely suggests the triumph of hope over experience. And as for the suggestion that the court of appeals can pass on these questions just as easily: Since when has it become a principle of our judicial administration that what can be left to the appellate level should be left to the appellate level? Quite the opposite is true. District judges, who issue their decrees in splendid isolation, can be multiplied ad infinitum. Courts of appeals cannot be staffed with too many judges without destroying their ability to maintain, through en banc rehearings, a predictable law of the circuit.

*Devlin*, 536 U.S. at 21–22 (Scalia, J., dissenting). It is one thing to permit a narrow class of appeals by absent class members to proceed following final approval of the class action settlement; it is an altogether different thing to grant objectors (who have not intervened) a full panoply of procedural rights, from which they may take up interlocutory appeals at every turn.  This Court should not start down that road.

## CONCLUSION

The Petition for Writ of Mandamus should be denied.

Dated: July 1, 2021

Respectfully submitted,

**NAPOLI SHKOLNIK PLLC**

**LEVY KONIGSBERG LLP**

/s/ Hunter Shkolnik
Hunter J. Shkolnik
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com

/s/ Corey M. Stern
Corey M. Stern
605 Third Avenue, 33rd Fl.
New York, NY 10158
(212) 605-6200
cstern@levylaw.com

*Co-Liaison Counsel for*
*Individual Plaintiffs*

*Co-Liaison Counsel for*
*Individual Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 7,800 words.  This document contains 5,426 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Corey M. Stern
Corey M. Stern

23

## CERTIFICATE OF SERVICE

I, Corey M. Stern, certify that on July 1, 2021, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ Corey M. Stern
Corey M. Stern